SUAREZ, C.J.
(dissenting).
I respectfully dissent. The majority decision has established an entirely new standard for the application of section 775.087(1), Florida Statutes,[6] governing the reclassification of certain crimes, not only in direct conflict with Florida Supreme Court precedent interpreting that statute, but also precedent out of every Florida district court of appeal including our own. The majority’s overbroad interpretation of the reclassification statute contravenes the long-held rule of statutory construction that “when the language [of the criminal statute] is susceptible of differing constructions, it shall be construed most favorably to the accused.” § 775.021(1), Fla. Stat. (1981) (providing the rules of construction for the provisions of that statute, which includes reclassification, section 775.087(1)).[7]
The statutory construction at issue in the language of section 775.087(1) is whether the words “carries, displays, uses ... any weapon or firearm during the commission of’ the offense refers to the weapon charged in the indictment and directly related to or available for use in the charged offense; or, as the majority now holds, that language refers to any weapon — charged or not — in the possession of a co-defendant, no matter how remote in time and geographical location from the actual charged crime. Up until today, section 775.087(1) .has been interpreted throughout the state to require the defendant to have carried, displayed, used, threatened or attempted to use the weapon actually used or available for use in com *927 mission of the felony. In this case, that weapon is co-perpetrator Martorano’s own gun that Martorano used to murder Callahan.
Even appellate counsel for the State conceded at oral argument there is no case law in the entire jurisprudence of this state, or in the entire country so far as we can discern, to support today’s interpretation and application of section 775.087(1) to reclassify based on 1) a co-defendant’s carrying, using, displaying, etc., a weapon not charged or mentioned in the indictment or information; 2) where that weapon was not the weapon used or available for use in the commission of the crime, and; 3) the defendant was remote in time and place from the commission of the crime. Case authority in Florida up to the present leads to only one conclusion: that Connolly’s conviction for second-degree murder as a principal was not subject to being reclassified under the statute. Because reclassification is inapplicable, the statute of limitation for the underlying offense has expired and the conviction should be vacated.
Let me be clear: Connolly’s conviction for second-degree murder is not the issue before us on appeal. Connolly’s participation in egregious acts and culpability as a principal should not enter into our analysis of the very specific and circumscribed legal issue raised by the parties in this appeal: whether section 775.087(1) allows reclassification of Connolly’s conviction of the lesser included offense of second-degree murder as a principal where Connolly was not present during the commission of the offense, and never carried the firearm used and charged in the indictment and referred to in the verdict.
At the outset, we must recognize the unusual procedural posture of this case. In 2005, the State of Florida decided to charge Connolly with murder in the first degree, as well as conspiracy to commit first-degree murder, although the criminal events occurred twenty-three years earlier, in 1982. The statute of limitation had run on the lesser included felony of second-degree murder, and any such conviction would have to be vacated.[8]
After trial, the jury acquitted Connolly of both conspiracy and first-degree murder, but found him guilty of the lesser included offense of second-degree murder as a principal. This result put the State between a rock and a hard place: the State wanted Connolly incarcerated and had risked a great deal to achieve a conviction, but everyone knew that the statute of limitation had run on the crime of second degree murder, and Connolly would have to be released. There was only one way for the State to repurpose the conviction, and that was to argue that Connolly’s conviction for second-degree murder should be reclassified to a life felony pursuant to section 775.087(1), as there is no statute of limitation on a life felony. Connolly would then be exposed at sentencing .to a term of years up to life in prison. The problem the State faced is that years of case law had interpreted section 775.087 to require the defendant to have been in actual possession of (carried, displayed, etc.) the weapon during commission of the crime, in order for a conviction to be reclassified. The State then pursued a novel theory to justify reclassification: the State argued that a literal reading of section 775.087(1) required only that the defendant possess “any” weapon or firearm. Thus, the State proposed, if during the commission of the crime the defendant carried “any weapon or firearm,” that defendant’s conviction could be reclassified pursuant to section *928 775.087(1). Connolly, though in Boston at the time of the murder, was obligated to wear his FBI-issued service weapon and thus, argued the State, he “carried” a firearm “during the commission of the felony,” referring to the language of section 775.087(1). The State got a verdict that, superficially at least, appeared to allow reclassification on this basis.
Two questions emerge from this ease: What time period is encompassed by the language “during the commission of the offense,” and, as among multiple defendants, to what weapon does the statutory phrase “any weapon or firearm” refer? The controversy over how this specific language within section 775.087(1) should be applied to the facts before us is the crux of this appeal.[9] My analysis of the issue on appeal has not changed: the “during the commission” of the murder refers to the discrete and time-limited act of shooting the victim with a firearm; the “any weapon or firearm” refers to one that was used or available for use during commission of that offense. Without the erroneous application of reclassification, Connolly’s conviction for second-degree murder as a lesser included offense of first-degree murder was barred by the applicable statute of limitation, and his sentence should be vacated.[10]
BACKGROUND
In 2005, former FBI agent Connolly was charged by indictment, as a principal,[11] *929 with co-defendants James Bulger, Stephen Flemmi and John Martorano, with first-degree murder (Count 1)[12] and conspiracy to commit first-degree murder (Count 2).[13] The indictment alleged that Connolly, while actively employed as an FBI agent, participated in a scheme to murder businessman John Callahan in South Florida on or about July 31, 1982. The State submitted evidence at trial that Connolly met a few times with co-defendants Bul-ger, Flemmi and Martorano in New York and/or Boston over several weeks preceding the murder. This evidence comprised the basis for the State’s charge of conspiracy to commit first-degree murder. The State’s evidence at trial also indicated that the scheme to murder Callahan occurred during these meetings. Further, the State’s evidence indicated Connolly wore his FBI-issued service weapon while he was at these meetings and, by implication, over the time period Callahan was murdered. However, the State’s evidence also showed that at the time of the actual murder, which occurred somewhere between Broward and Miami-Dade Counties, Florida, Connolly and his service weapon were both approximately 1,400 miles away in Boston, Massachusetts. It was undisputed that co-defendant Martorano used his own gun to shoot Callahan, and that Connolly never carried, displayed, used, or threatened to use the murder weapon.
In 1982, when the murder occurred, the statute of limitation for a first-degree felony was four years. § 775.15(2)(a), Fla. Stat. (1981). Thus, by the time Connolly was indicted in 2005, the four-year statute of limitation had expired some nineteen years earlier for the first-degree felonies of conspiracy to commit first-degree murder, section 777.04(4)(b), Florida Statutes (1981), and second-degree murder, section 782.04(2), Florida Statutes (1981).[14] Any conviction on those charges was thus barred by the four-year statute of limitation in effect at the time of the 1982 murder. The trial court denied Connolly’s motion to dismiss the charge in Count 2 of conspiracy to commit first-degree murder with a firearm. Connolly did not move pre-trial to dismiss Count 1, first-degree murder with a firearm, based on the State’s failure to charge him with possession of a separate firearm because reclassification was not an issue: first-degree murder in 1982, and at present, was a capital felony and cannot be reclassified to a higher offense.
At the conclusion of the trial, during the jury instruction conference, the discussion turned to lesser included offenses. The trial court pointed out that, were Connolly to be convicted of second-degree murder without a firearm, the statute of limitation would be found to have run and Connolly would be discharged. The defense re *930 peatedly objected to inclusion of any lesser included offenses. The State requested the jury be instructed on second-degree murder with a firearm as a lesser included offense of first-degree murder. The State argued if Connolly were so convicted, it would seek reclassification of that first-degree felony to a life felony pursuant to section 775.087(1), and that a life felony was not barred by the four-year statute of limitation.
The trial court granted the State’s request over defense counsel’s objection, adding “carrying a firearm,” as a fourth element to the second-degree murder instructions. The jury was thus instructed that to find Connolly guilty of second-degree murder they must find the following four elements beyond a reasonable doubt: 1) Callahan is dead; 2) His death was caused by the criminal act of Connolly; 3) There was an unlawful killing of Callahan by an act imminently dangerous to another- and demonstrative of a depraved mind without regard for human life; and 4) During the act, Connolly carried a firearm.
The jury acquitted Connolly of Count 2, conspiracy to commit first-degree murder with a firearm, as well as Count 1, first-degree murder, but found him guilty of the lesser included offense subsumed within Count 1 of second-degree murder with a firearm. The verdict form simply stated, “Guilty of second-degree murder, with a firearm, as a lesser included offense of first-degree murder.” Based on the jury’s verdict that found Connolly guilty of second-degree murder “with a firearm,” the trial court reclassified the conviction to a life felony pursuant to section 775.087(1) and sentenced Connolly to forty years in prison.
ANALYSIS
1) Count 1 of the indictment failed to provide Connolly with notice that a conviction for a lesser included offense as a principal could be reclassified based on his own weapon, where Connolly was not present during the commission of the offense, and his weapon was unrelated to the commission of the offense.
It is pure sophistry to argue that the general reference to section 775.087 in Count 1 of the indictment put Connolly on notice that his service weapon — an uncharged [15] firearm completely unrelated to the murder, located in an entirely different state at the time of the offense, could later be the basis for reclassifying a time-barred conviction of a lesser included offense to a non-time-barred life felony, for committing the offense “with a firearm.”[16] Due process of law requires the State to allege every essential element when charging a violation of law to provide the accused with sufficient notice of the allegations against him. Art. I, § 9, Fla. Const.; M.F. v. State, 583 So.2d 1383, 1386-87 (Fla.1991). In this case, there has been a fundamental denial of due process because the Defen *931 dant’s conviction was erroneously reclassified based on a charge not made in the information or indictment. See Thornhill v. Alabama, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940);[17] compare Inmon v. State, 932 So.2d 518, 520 (Fla. 4th DCA 2006) (holding that State’s failure to specifically reference the subsection within section 775.087 in the information renders notice of the particular enhancement sought against the defendant insufficient).
Count 1 of the indictment alleged the four co-perpetrators killed Callahan “by shooting the said JOHN B. CALLAHAN with a firearm,” but does not allege Connolly personally possessed, used, or carried a firearm, either the murder weapon or Connolly’s FBI-issued firearm, during the commission of the murder. The only weapon implied by “shooting ... JOHN B. CALLAHAN” is the murder weapon. The State acknowledges it was uncontested the only gun used to shoot the victim was possessed and discharged by co-defendant Martorano and Connolly is not the person who effected “the death of [the victim] by shooting [the victim] with a firearm.”[18] Further, the phrase “with a firearm” is clearly singular, and refers to the manner in which John Callahan was killed: it is clearly a reference to the only firearm used. From the language of Count 1, no reasonable person could conclude that the State was planning to apply section 775.087(1), upon possible conviction for a lesser included offense, to an unmentioned firearm that had nothing to do with the murder.
The State argues that Connolly’s failure to challenge the sufficiency of the indictment by motion to dismiss constituted a waiver and should have precluded his ability to raise the issue at a later time. The State’s arguments on the issue of waiver are entirely unpersuasive. First, Connolly had no reason to seek to dismiss the first-degree murder charge in Count 1 of the indictment because it is a capital felony, punishable by death, and is not subject to reclassification or enhancement as there is no higher punishment level. Further, the charging document failed to place Connolly on notice that conviction on a lesser included offense would subject him to reclassification pursuant to section 775.087(1) because the language of Count 1 did not expressly single him out, as one of the four equally charged co-defendants, with actually possessing, carrying, using or discharging a second firearm, i.e., his FBI-issued sidearm. Martorano’s firearm, the murder weapon, was the only weapon charged in Count 1. As this was a multi-defendant case and only one of the defendants, Mar-torano, used the gun to shoot the victim, Connolly would have no reason to'conclude that the general reference in Count 1 to section 775.087 pertained to him rather than the actual shooter.[19] Connolly’s only *932 avenue of relief was to object to the inclusion of any lesser included offenses, which the record clearly shows his defense counsel strenuously and continuously did.
The State relies on Mesa v. State, 632 So.2d 1094 (Fla. 3d DCA 1994), to support its contention that Connolly’s failure to object prior to trial to the charging document as flawed amounts to waiver. But Mesa is pointedly distinguishable in several ways. First, and most important, Mesa involved only one defendant and one gun, the gun used in the crime. There was no opportunity for confusion regarding who committed the crime and used the weapon. Thus, the general reference to section 775.087 in Mesa’s charging document was enough to put him on notice that the prosecution was seeking reclassification under subsection (1) and/or enhancement for possession of a firearm under subsection (2) because he was the only defendant, and there was only one weapon involved. Further, the reference in the indictment that Mesa “did shoot” the victim put him on notice that, as he was the only perpetrator, he was charged with actually using a firearm in the crime. In addition, the jury specifically found that Mesa actually used a firearm via a special verdict form, to which he did not object. Thus, there was a clear jury finding that Mesa personally used the weapon. Finally, I note that Mesa was charged in the information with second-degree murder, not first-degree murder. Mesa was thus aware that his conviction could be reclassified as a higher degree felony.
Contrary to the facts in Mesa, Connolly was not the sole defendant, but was one of four co-perpetrators equally charged with first-degree murder; that crime cannot be reclassified to a higher offense; Connolly did not shoot Callahan; Connolly did not carry, display, possess, use or threaten to use, the murder weapon; and Connolly was miles from the murder at the time it was committed. Mesa and progeny are inapplicable to the specific facts presented in this case.[20]
[21]
The State asserts that Connolly cannot claim that he was not on notice of the possibility of reclassification because, as early as two years prior to trial, Connolly had actual notice that the State was seeking to reclassify a lesser charge on the specific basis of Connolly’s possession of a firearm during the Count 2 conspiracy offense. As we explain below in this opinion, upon conviction of a lesser included offense to Count 2 conspiracy, reclassification based on Connolly’s firearm — which he carried during the conspiratorial meetings — would have been legally permissible had Connolly not, in fact, been acquitted of that charge. In that context, Connolly was appropriately charged with carrying his service weapon during the commission of the crime of conspiracy because it is an ongoing offense taking place over a period *933 of time. See generally, Rosen v. State, 757 So.2d 1236 (Fla. 4th DCA 2000) (explaining application of statute of limitation to continuing, as contrasted with discrete, offenses). During the conspiracy, Connolly met with his co-defendants and the evidence indicated that, while participating in these meetings, Connolly wore his service weapon. Reclassification for carrying a weapon during an ongoing offense is legally supported. Section 5, infra. Connolly was, however, acquitted of the Count 2 conspiracy charge, rendering moot the merit of his pretrial motion to dismiss that count. As I discussed above, the State’s assertion that Connolly was on actual notice of the applicability to him of the reclassification statute upon conviction of any lesser included offense within the Count 1 first-degree murder charge is untenable. Let us not confuse these two counts or the statutory elements necessary to prove those two entirely separate criminal offenses.
The State concedes there is no case law to support its unprecedented theory that reclassification upon conviction of a lesser included offense to first-degree murder could be accomplished where the co-defendant was not present during the offense, and did not actually carry, display, use or threaten to use, the actual firearm used by his co-defendant in the commission of the felony. The established case law at time of trial and at present is that, in a felony involving the use of a weapon, a defendant’s sentence may only be reclassified upon a showing that the defendant had personal possession of the weapon during the commission of the felony. State v. Rodriguez, 602 So.2d 1270 (Fla.1992). The State’s theory justifying reclassification, that Connolly carried his FBI-issued firearm during talks with his co-conspirators weeks prior to the murder is, as everyone agrees, an issue of first impression and Connolly cannot be said to have either anticipated or waived the issue. Where the State failed to allege in Count 1 that Connolly carried, displayed, used, threatened to use or attempted to use a second, unrelated firearm during the commission of the homicide, I conclude reclassification pursuant to section 775.087(1), given the facts in this case, was improper. The case controlling application of section 775.087(1) is the Florida Supreme Court case of State v. Rodriguez, 602 So.2d 1270 (Fla.1992). Between the holding of Rodriguez and the language of section 775.087(1) lies “language susceptible of differing construction.” § 775.021(1).
2) It was error to reclassify based on a conviction as a principal for vicariously possessing the only weapon charged in count 1 and actually used in the murder.
Connolly could properly have been convicted as a principal of the lesser included offense of second-degree murder pursuant to section 777.011, Florida Statutes (1981).[22] But a defendant’s conviction may not be reclassified for a co-defendant’s possession of a firearm during a felony. Rodriguez, 602 So.2d at 1270.
In Rodriguez,[23] the Florida Supreme Court construed the language of section *934 775.087(1) and answered this certified question in the negative: “Does the enhancement provision of subsection 775.087(1), Florida Statutes (1983), extend to persons who do not actually possess the weapon but who commit an overt act in furtherance of its use by a coper-petrator?” Id. at 1271. The Court focused on the language of subsection 775.087(1), which requires that the defendant carry, display, use, threaten, or attempt to use any weapon or firearm. Id. [emphasis in original]. The Court held that when a defendant is charged with a felony involving the “use” of a weapon, his or her sentence cannot be enhanced [reclassified] under section 775.087(1) without evidence establishing that the defendant had personal possession of the weapon during the commission of the felony. Id. at 1272. The Court explicitly rejected the idea that a defendant could be subject to reclassification under subsection 775.087(1) as a principal, i.e., where the defendant did not personally possess the weapon used during the commission of the offense. Id.
In the case before us, Count 1 of the indictment refers only to the murder weapon used by co-defendant Martorano and does not charge Connolly with possession or use of a second weapon (his own) in the commission of that offense. The evidence is undisputed that Connolly never possessed, carried, displayed or used the firearm used by Martorano to kill Callahan. Pursuant to Rodriguez, Martorano’s firearm cannot be viewed as constructively possessed by Connolly for purposes of reclassification to avoid the statute of limitation on first-degree felonies. See id. Further, the verdict form did not include any interrogatory regarding Connolly’s actual possession of the firearm alleged in Count 1, nor did the jury, by its verdict, make any finding that Connolly personally possessed the firearm used to shoot the victim. In Rodriguez, the firearm described in the information as the one used during the attempted murder “was at no time carried, displayed, used, or attempted to be used” by the defendant. 602 So.2d at 1271-72. The Rodriguez Court reached its holding despite the plain language of the statute indicating “any” weapon, not “the” weapon was “carried, displayed, used,” etc.
3) It was error to reclassify based on carrying a weapon remote in time and unrelated to the charged offense.
The State proposes that a finding of “any” weapon on a principal co-defendant, however remotely situated, is enough to ground reclassification. This is contrary to the holding of Rodriguez and its related cases because the Rodriguez Court also noted in its opinion that the defendant’s sentence could have been “enhanced” (more accurately, reclassified) under section 775.087(1) if the State had charged him with the commission of a felony while carrying the pistol that was found on his person after the chase. “The failure of the State to properly charge Rodriguez precludes it from enhancing his sentence under the carrying portion of the statute.” 602 So.2d at 1272 (emphasis added). In the case before us, Connolly was not charged in Count 1 with carrying, *935 displaying, using, etc., his service revolver during the commission of the murder, nor was that uncharged weapon at all related to the murder offense. See, e.g., Arnett v. State, 128 So.3d 87 (Fla. 1st DCA 2013) (holding that 775.087 enhancement was improper where the grounds for enhancement were not clearly charged in the information, and a jury finding that the appellant actually possessed a firearm does not cure the charging defect). The same conclusion as arrived by the Florida Supreme Court in Rodriguez applies here. Consequently, the trial court’s reclassification was fundamentally erroneous.
The majority’s legal conclusion contradicts years of case authority interpreting section 775.087(1) as requiring that the defendant must personally possess the weapon used in the commission of the crime so charged. See e.g., Chase v. State, 74 So.3d 1138 (Fla. 2d DCA 2011) (holding that defendant’s conviction for aggravated battery should not have been reclassified from a second-degree felony to a first-degree felony based on use of a weapon pursuant to section 775.087(1), where the evidence showed that only the co-defendant possessed or used a weapon during the offense); Alusma v. State, 939 So.2d 1081 (Fla. 4th DCA 2006) (reversing reclassification under section 775.087(1) where the defendant was convicted as a principal with his co-defendant, and the verdict did not reflect that the defendant was in actual possession of the firearm during the offense); Parker v. State, 906 So.2d 1273 (Fla. 5th DCA 2005) (noting that reclassification under section 775.087(1) is impermissible unless the defendant actually possesses a weapon during the commission of the crime); Porter v. State, 737 So.2d 1119, 1119 (Fla. 2d DCA 1999) (citing Rodriguez for the proposition “that section 775.087(1) does not permit vicarious enhancement”); Clark v. State, 701 So.2d 912 (Fla. 4th DCA 1997) (same; citing to Rodriguez, and Williams v. State, 622 So.2d 456 (Fla.1993)); Williams v. State, 656 So.2d 574, 575 (Fla. 1st DCA 1995) (holding murder sentence cannot be enhanced under section 775.087(1) where the jury specifically found “a firearm not in [defendant’s] physical possession was used” in the course of committing the murder); Robins v. State, 602 So.2d 1272 (Fla.1992) (quashing affirmance of reclassification under section 775.087(1) based on co-defendant’s wielding of gun during commission of kidnapping offense); Willingham v. State, 541 So.2d 1240 (Fla. 2d DCA 1989) (holding it error to reclassify a sentence for use of a weapon during the discrete act of sale of drugs based on vicarious possession, where the co-defendant possessed the firearm during the transaction). The cited cases demonstrate that, when no evidence is presented that a defendant personally carried, displayed, used, threatened to use, or attempted to use a weapon related to the commission of the charged crime, it is error for the trial court to enhance the defendant’s sentence based on a co-defendant’s use of a firearm.
4) Connolly’s conviction as a principal pursuant to section 777.011, would have been legally permissible (if not time-barred), but reclassification of his conviction is not.
But for the expiration of the statute of limitation, Connolly could have been convicted of second-degree murder as a Principal in the first degree, pursuant to section 777.011, which provides,
777.011 Principal in first degree.— Whoever commits any criminal offense against the state, whether felony or misdemeanor, or aids, abets, counsels, hires, or otherwise procures such offense to be committed, and such offense is committed or is attempted to be committed, is a principal in the first degree and may be charged, convicted, and punished as such, whether he or she is or is not *936 actually or constructively present at the commission of such offense.
But the Florida Supreme Court explicitly rejected the idea that a defendant could be subject to reclassification under subsection 775.087(1) as a principal. Rodriguez, 602 So.2d 1270. On the facts before us, the criminal offense referenced in section 777.011 is the criminal offense for which the State sought to convict Connolly in' Count 1. That is to say, the State charged Connolly as a principal in Count 1 with the first-degree murder of Callahan by shooting him with a firearm, not any underlying conspiracy that may have precipitated the murder, i.e., the “act” of meeting with co-perpetrators weeks earlier.
a) The language in section 775.087(1), “during the commission of the offense,” refers to the homicide, not the acts of conspiracy contributing to the homicide.
“Act” is defined in the standard jury instructions as including “a series of related actions arising from and performed pursuant to a single design or purpose.” Fla. Std.Crim. Jury Inst. 7.4. The state argued, and the majority here concludes, that the meetings Connolly had with the co-conspirators three weeks before Callahan’s murder comprised the “act” referred to in the jury instructions. The majority posits that the “act” of meeting with the co-conspirators was performed with “a single design or purpose,” i.e., to kill Callahan.
Connolly’s complicity in the murder, however, is limited to his role in the conspiratorial meetings, acts for which he was acquitted. The “acts” necessary to plan and accomplish the actual murder were performed by the co-perpetrators, not by Connolly.[24] The majority, however, ignores the conspiracy acquittal and judicially expands the definition of “act” by en-grafting elements of the ongoing crime of conspiracy to the discrete crime of murder in order to justify reclassification based on the unrelated weapon. The majority’s interpretation of “act” to encompass elements of the conspiracy conflates the two entirely separate statutory crimes of conspiracy and murder, and the evidence necessary to prove them. The majority’s “plain reading” rationale introduces an unprecedented and unjust application of the definition of “act” in order to justify reclassification of the murder conviction based on Connolly’s entirely unrelated and uncharged firearm.[25] This conclusion is not supported by precedent. See Perkins v. State, 576 So.2d 1310, 1312 (holding that, to the extent a statutory word or phrase is vague or ambiguous, the court is under an obligation to construe it in the manner most favorably to the accused). “Words and meanings beyond the literal language [of the statute] may not be entertained nor may vagueness become a reason for broad *937 ening a penal statute.” Id. at 1312; see also Lemus v. State, 33 So.3d 774, 776 (Fla. 4th DCA 2010) (rejecting, as contrary to both the plain meaning of the statute and the “rule of lenity,” the State’s over-broad interpretation of 775.087 that, as the defendant fired a revolver while earlier engaged in a standoff, the weapon was fired during the “criminal episode” of the subsequent assault for purposes of applying a mandatory minimum sentence under that statute); Kasischke, 991 So.2d at 814-15 (Fla.2008); Lambert, 545 So.2d at 841 (Fla.1989).
Even if one considered each of Connolly’s meetings with the co-conspirators to be an “act,” for purposes of convicting him of murder, the reclassification still will not stand because at each of those meetings or “acts” Connolly did not carry, display, use, threaten or attempt to use the firearm explicitly charged in Count 1, the murder weapon, Martorano’s firearm. Rodriguez, 602 So.2d at 1272 (“When a defendant is charged with a felony involving the ‘use’ of a weapon, his or her sentence cannot be enhanced under section 775.087(1) without evidence establishing that the defendant had personal possession of the weapon during the commission of the felony.”) [emphasis supplied],
5) Connolly was acquitted of conspiracy, the only charge that would support reclassification for committing the offense “with a firearm.”
Had Connolly been convicted as charged in Count 2 of conspiracy to commit first-degree murder with a firearm,' reclassification under section 775.087(1) would have been proper. There was competent and sufficient evidence presented at trial that Connolly met with the co-defendants over several weeks prior to the actual murder event. Evidence was presented at trial that Connolly was obligated to carry his FBI-issued firearm while on duty as an FBI agent, and that he was observed at various times wearing his firearm during those meetings with the co-defendants. The illegal nature of those transactions and Connolly’s participation in those illegal meetings while carrying his service weapon formed the factual basis for charging Connolly with the ongoing crime of conspiracy to commit first-degree murder with a firearm. A co-defendant’s possession of a weapon during an ongoing- offense, such as trafficking or conspiracy, can be used to reclassify the sentence upon conviction as a principal. See e.g., Smith v. State, 438 So.2d 10 (Fla. 2d DCA 1983) (holding reclassification proper where evidence supported finding that one defendant had a firearm in the immediate area of the crime, and another defendant carried a firearm while in the discrete act of possessing marijuana); Menendez v. State, 521 So.2d 210, 212 (Fla. 1st DCA 1988) (finding competent substantial evidence that defendant carried or used a firearm during the course of the ongoing offense of cocaine trafficking sufficient to support reclassification pursuant to section 775.087(1); noting that crimes covered by section 775.087 require actual possession because they are generally of short duration and the purpose served by the firearm requires physical possession of the weapon ) (emphasis supplied).
Such precedent is without application here, however, because Connolly was acquitted of the ongoing crime of conspiracy to commit murder, and the evidence supporting the “with a firearm” element of that charge cannot be transplanted to the separate and discrete charge of murder. The “with a firearm” elements of Count 1 and Count 2 refer to entirely different criminal acts with different statutory elements, and do not rely on evidence of possession or use of the same weapon. The “shooting ... JOHN B. CALLAHAN with a firearm” element of the first-degree *938 murder charge refers to the actual murder weapon. Whereas Connolly’s possession of his service weapon would have correctly supported the “with a firearm” element of the conspiracy to commit murder charge set forth in Count 2 of the indictment. The two charges in this case and the evidence supporting them are not interchangeable. See Brown v. State, 130 Fla. 479, 178 So. 153 (1938) (holding that the commission of a substantive crime and a conspiracy to commit the substantive crime are separate and distinct offenses). As I have previously explained, Connolly’s conviction cannot be reclassified based on Martorano’s possession of the only weapon charged in Count 1. See Willingham, 541 So.2d at 1240 (“A plain reading of section 775.087(1) would be to require proof that Willingham actually carried or used a firearm during the course of the offense. Any other interpretation is not expressed clearly in the statute, and even if susceptible to such a construction, i.e., principal theory can be used to establish use of firearm, the construction more favorable to the defendant must be given effect.”); Menendez, 521 So.2d at 215, n. 3; cf. Glynn v. State, 868 So.2d 1280 (Fla. 4th DCA 2004) (noting the difference between a continuous or ongoing criminal offense and one involving discrete acts, for sentencing purposes).
Furthermore, the conviction cannot be reclassified based upon Connolly’s possession of his FBI-issued service weapon in Boston at the time of the murder in Florida. Of the reclassification cases I have examined in this appeal, those cases uniformly present facts showing the weapon used to reclassify the' crime to a higher offense was both temporally and spatially related to the crime committed. The facts here are in stark contrast: Connolly was hundreds of miles away in Boston at the time the discrete act of murder occurred; he may or may not have “carried” his service weapon at the time of the murder. It is beyond question that Connolly’s service weapon was neither available for use nor was it used in the murder; it had absolutely no spatial or temporal relationship to the discrete crime charged; it had no purpose related to the crime charged. See Williams v. State, 622 So.2d 456 (Fla.1993) (finding it error to enhance defendant’s sentence pursuant to sections 775.087(1)-(2), where facts showed the defendant was in Miami at the time the crimes in Pensacola were committed by his cohorts, thus the State consequently failed to show that the defendant had actual physical possession of a firearm during-the commission of the crime); Lemus, 33 So.3d at 776. The “carrying” element present in Connolly’s case was only applicable to a charge for which he has been acquitted. I can find no case law interpreting section 775.087(1) that would apply to the facts presented in this case, and find, however, much case law to go against the majority’s contortion of the application of section 775.087(1) to fit these facts.
6) The jury verdict fails to support reclassification.
The State argues that the verdict did, in fact, find Connolly guilty of second degree murder “with a firearm,” satisfying State v. Overfelt, 457 So.2d 1385 (1984). This argument fails because that phrase is a reference to the murder weapon, not Connolly’s service weapon. The jury verdict does not find that Connolly actually carried, displayed, used, threatened, or attempted to use a second firearm (i.e., his service weapon) during the commission of the murder. The words, “with a firearm” in the verdict form are not decisive to reclassification because “with a firearm” merely duplicates the language of the indictment, and refers only to the manner in which Callahan was killed. See Roberts v. State, 923 So.2d 578 (Fla. 5th DCA 2006) (“The jury expressly found that Roberts carried, used, threatened to use, or at *939 tempted to use a weapon in committing both crimes. This is exactly what is required for reclassification ... under section 775.087(1)”); Streeter v. State, 416 So.2d 1203, 1206 (Fla. 3d DCA 1982).
In this multiple defendant scenario, the jury verdict is fundamentally flawed because, 1) the indictment did not specifically charge Connolly, one of four equally charged co-defendants, with actually carrying, displaying, using, threatening, or attempting to use, a second firearm during the shooting of Callahan; 2) Connolly’s service weapon was unrelated to the actual commission of the murder; 3) the “carried a firearm” aspect of Connolly’s involvement with the co-defendants was only applicable to the ongoing criminal conspiracy alleged in Count 2, of which he was acquitted; and 4) the jury’s verdict fails to specify that Connolly — among the four co-defendants — carried, displayed, used, or threatened to use a separate, uncharged, weapon during the act of second-degree murder. As noted in Streeter, 416 So.2d at 1206,
If the State seeks to have a defendant’s crime upwardly reclassified and his sentence thus enhanced because a weapon was used, it is incumbent upon it to see that the verdict forms pertaining to any count susceptible to reclassification under Section 775.087 contain the required additional finding that the defendant committed the crime in a manner prohibited by the reclassification statute,
(emphasis added). And, as the Florida Supreme Court held in Overfelt, 457 So.2d at 1385,
Before a trial court may enhance a defendant’s sentence for use of a firearm, the jury must make a finding that the defendant committed the crime while using a firearm either by finding him guilty of a crime which involves a firearm or by answering a specific question of a special verdict form so indicating.
This crime may have “involved a firearm,” as Overfelt indicated, but it was not the firearm contemplated by either the verdict form or the State’s theory of reclassification.
CONCLUSION
Under the factual and legal circumstances presented in this case, which all parties agree.is a case of first impression, Connolly’s conviction for second-degree murder with a firearm should not have been reclassified to a life felony in order to circumvent the statute of limitation on the underlying first-degree felony. Without the fundamentally erroneous reclassification, -the first-degree felony of second-degree murder was time-barred. I strenuously dissent from the majority’s new and unprecedented expansion of the application of section 775.087(1) to apply to a weapon not charged in the indictment or information, and spatially and temporally unrelated to the actual offense charged.
The majority has by its opinion so broadened the interpretation of section 775.087(1) in our district as to be in direct conflict with case authority from other Florida district courts of appeal and the Florida Supreme Court. Introducing this .unprecedented and novel application of the statutory language of reclassification into Florida criminal jurisprudence will, quite predictably, confuse legal outcomes in criminal cases in Florida into the future.
Finally, I would certify the following question to the Florida Supreme Court as a matter of great public importance, in order to resolve the apparent conflict between the majority’s interpretation of section 775.087(1) and the interpretation and application of that statute in the controlling authority of State v. Rodriguez, and related cases:
Does section 775.087(1) allow reclassification of a conviction where “during the *940 commission of such a felony the defendant carries, displays, uses, threatens, or attempts to use any weapon or firearm” and that firearm or weapon is uncharged, and is unrelated to the com-' mission of the crime and/or is spatially and temporally distant from the crime?
SHEPHERD and LAGOA, JJ., concur.
EMAS, J., concurs in result.

. Section 775.087(1), Florida Statutes (1981) (emphasis supplied) provides,
Unless otherwise provided by law, whenever a person is charged with a felony, except a felony in which the use of a weapon or firearm is an essential element, and during the commission of such a felony the defendant carries, displays, uses, threatens, or attempt to use any weapon or firearm, or during the commission of such felony the defendant commits an aggravated battery, the felony for which the person is charged shall be reclassified as follows: (a) In the case of a felony of the first degree, to a life felony ...

. See, Kasischke v. State, 991 So.2d 803, 814-15 (Fla.2008) (observing in regard to ambiguous criminal statute that we "cannot simply choose our preferred construction” and "In Florida, the rule [of lenity] is not just an interpretive tool, but a statutory directive”); Lambert v. State, 545 So.2d 838, 841 (Fla.1989) ("In construing [penal] statutes, we begin with the principle that, where criminal statutes are susceptible to differing constructions, they must be construed in favor of the accused.”).

. See § 775.15(2)(a), Fla. Stat. (1982) ("A prosecution for a felony of the first degree must be commenced within 4 years after it is committed.”)

. In yet another procedural twist, one month after the trial Connolly filed a motion in arrest of judgment on grounds that the second-degree murder conviction could not be reclassified to a life felony and was therefore barred by the statute of limitation. The trial court agreed with Connolly that the second-degree murder conviction could not be reclassified as Connolly did not personally carry the murder weapon and was in Boston during the commission of the offense. The trial court rejected the State's argument that, as Connolly always carried his firearm while on duty, this constituted "possession” of a weapon. The trial court noted that,
This argument fails to take into account that the Defendant having a weapon three weeks prior to the murder does not change the fact that [he] had to have possessed the actual murder weapon at the time of the murder for the reclassification of second degree murder with a firearm under §§ 775.087 and 777.011, Fla. Stat., to apply-
The trial court was nonetheless compelled to deny Connolly’s motion, correctly ruling that as defense counsel filed the motion more- than ten days after rendition of the verdict, the court had lost jurisdiction as the motion was untimely filed pursuant to Florida Rules of Criminal Procedure 3.610(c) and 3.590(a).

. See Toussie v. United States, 397 U.S. 112, 114-115, 90 S.Ct. 858, 25 L.Ed.2d 156 (1970):
The purpose of a statute of limitations is to limit exposure to criminal prosecution to a certain fixed period of time following the occurrence of those acts the legislature has decided to punish by criminal sanctions. Such a limitation is designed to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far-distant past. Such a time limit may also have the salutary effect of encouraging law enforcement officials promptly to investigate suspected criminal activity. For these reasons and others, we have stated before "the principle that criminal limitations statutes are 'to be liberally interpreted in favor of repose.' ”
See also Mead v. State, 101 So.2d 373, 375 (Fla.1958) ("The appellant was not required to raise the question of the statute of limitations as the statute must be construed liberally in favor of defendants and need not be pleaded in bar. It was incumbent on the state not only to prove that the appellant perpetrated the crime but that he did so within [the statute of limitation period] of the filing of the information on which he was being tried.”).

.§ 777.011, Fla. Stat. (1981), Principal in the first degree; see also fn. 17, infra.

. Count 1 of the indictment states that four co-perpetrators, Bulger, Flemmi, Martorano, and Connolly:
did unlawfully and feloniously kill a human being, to wit: JOHN B. CALLAHAN, from a premeditated design to effect the death of the person killed or any human being, by shooting the said JOHN B. CALLAHAN with a firearm, in violation of s. 782.04(1), s. 775.087, and s. 777.011, Florida Statutes ....

. Count 2 states that the same four co-defendants.
"did unlawfully and feloniously agree, conspire, combine, or confederate [with one another] to commit a criminal offense, to wit: Murder in the first degree with a firearm upon JOHN B. CALLAHAN, in violation of s. 782.04(1), s. 777.04(3), s. 775.087, and s. 777.011, Florida Statutes....”

."It is firmly established law that the statutes in effect at the time of commission of a crime control as to the offenses for which the perpetrator can be convicted, as well as the punishments which may be imposed.” State v. Miranda, 793 So.2d 1042, 1044 (Fla. 3d DCA 2001).

. When I refer to an "uncharged," weapon in this dissent, I mean that the firearm used as the basis to reclassify the conviction is not the one specifically referred to in the charge of first-degree murder in Count 1 of the Indictment. Count 1 only specifically mentions the firearm used to murder Callahan and no other weapon. Connolly’s firearm is thus "uncharged."

. The State cites to Miller v. State, 460 So.2d 373 (Fla.1984), to support its argument that reclassification was proper. It is true that the primary charge in an indictment or information includes all lesser included offenses, for purposes of reclassification, but I cannot agree that Miller supports reclassification pursuant to section 775.087(1) based on a weapon uncharged and unrelated to the commission of the offense. Miller, in addition, involved one defendant, not multiple co-defendants, and it was clearly established that Miller had actually used the handgun during the commission of the crime.

."A conviction on a charge not made by the indictment or information is a denial of due process” and an indictment or information that "wholly omits to allege one or more of the essential elements of the crime” cannot support a conviction for that crime. State v. Gray, 435 So.2d 816, 818 (Fla.1983). This is a deficiency that can be raised at any time. Id. The Florida Supreme Court has consistently applied these principles. See, e.g., Jaimes v. State, 51 So.3d 445, 448 (Fla.2010) ("It is a fundamental principle of due process that a defendant may not be convicted of a crime that has not been charged by the state.”); Price v. State, 995 So.2d 401, 404 (Fla.2008) (reiterating that the failure to allege an essential element of a crime may be raised in a habeas petition).

. See in. 7, supra.

. At the time of the indictment and trial, case precedent interpreted the language of section 775.087 to apply only to the defendant who actually possessed, carried, displayed, etc. the actual weapon used in commission of the offense. Connolly never possessed, used, displayed, or even had knowledge of the gun used to kill Callahan and, additionally, was approximately 1,400 miles away when the murder occurred.

. Connolly does not challenge the language in Count 1 of the indictment as defective, as the State persistently argued, but rather that the statutory basis for reclassification upon conviction for a lesser included offense was not charged, i.e., carried, displayed, used, threatened or attempted to use, a second weapon during the commission of the felony.

. The State correctly notes that the test for granting relief based on a defect in a charging document is actual prejudice, and argues that there was no prejudice to Connolly because first-degree murder and the lesser included offense of second degree murder both carry a maximum penalty of life, citing to State v. Gray, 435 So.2d 816 (Fla.1983), and Delgado v. State, 43 So.3d 132 (Fla. 3d DCA 2010). I find no greater "actual prejudice,” however, than the facts presented by Connolly’s case: conviction for a first-degree felony alone would have resulted in discharge under the applicable statute of limitation, but reclassification based on uncharged and unproven "carrying” of a weapon completely unrelated to the charged offense resulted in a forty-year sentence.

. Section 777.011 reads:
Whoever commits any criminal offense against the state, whether felony or misdemeanor, or aids, abets, counsels, hires, or otherwise procures such offense to be committed, and such offense is committed or is attempted to be committed, is a principal in the first degree and may be charged, convicted, and punished as such, whether he is or is not actually or constructively present at the commission of such offense.

. Rodriguez actually arose out of our court. State v. Rodriguez, 582 So.2d 1189 (Fla. 3d DCA 1991). In that case, the police attempted to pull Rodriguez's car over and a high speed chase ensued. During the chase, a passenger in Rodriguez's car picked up a rifle from the car seat and shot at the police. At *934 trial, Rodriguez’s conviction was reclassified pursuant to section 775.087(1). Upon post- ' trial motions, the trial court agreed the reclassification was illegal as Rodriguez never possessed the rifle that that was fired by the co-perpetrator during the chase. On appeal, this court agreed. This court has previously ruled that “the enhancement provisions of section 775.087(1), Florida Statutes (1977), ... requires that the defendant personally possess the weapon during the commission of the crime involved.” Id. at 1190 (citing to Postell v. State, 383 So.2d 1159, 1162 (Fla. 3d DCA 1980)) (emphasis supplied).

. Martorano convinced Callahan that they needed to meet to discuss the recent killing of another business associate. Martorano picked Callahan up at the Ft. Lauderdale airport; Callahan got into the van’s front seat while Martorano put his luggage in the back seat. Martorano then shot Callahan in the back of the head. Martorano and an associate then transferred the body to the trunk of ' Callahan's Cadillac, drove to Miami International Airport and left the car in the parking garage. They concocted a story about Callahan having a problem with a Cuban group in south Florida in order to deflect investigations away from Bulger and Flemmi in Boston.

. Under the majority’s rationale, a defendant who is not present during the commission of a felony but who "carries, displays,” etc. a weapon or firearm (for example, a legally registered weapon worn or possessed by valid concealed weapons permit) unrelated to the felony itself, may be convicted as a principal and have his or her conviction reclassified based on that unrelated weapon. The policy implications of this holding are profound.